# SARAH M. PRATT, *Respondent, v.* BRIGHAM YOUNG, *Appellant.*

MAYOR OF SALT LAKE CITY—TRUST.—The Mayor of Salt Lake City whenever he enters land under the Act of Congress, approved March 2d, 1867, thereafter holds the legal title of the same in trust for the several use and benefit of the occupants thereof, according to their respective interests.

ACTUAL OCCUPANCY MUST EXIST.—In order to control the title thus held by the Mayor, there must be an actual *bone fide* occupancy by the claimant, *or cestie que trust.*

ACT OF CONGRESS CONSTRUED.—The power conferred by the said Act of Congress upon the Territorial Legislature is: to make regulations for the *execution* of the trust, and not to in any manner interfere with or modify the rights conferred by the Act.

WRONGFUL OCCUPANCY DOES NOT CREATE TRUST.—A claimant who was in the *bone fide* occupancy of a city lot prior to the entry thereof by the Mayor, and was wrongfully ousted by an intruder before such entry was made by the Mayor, should receive the legal title thereto, notwithstanding the wrongful occupancy by the other at the time of the entry.

No RIGHT TO TITLE WITHOUT OCCUPANCY.—The "Town Site" act referred to does not in any case confer the right to the title of a lot upon an individua who was *never* the personal occupant of such lot.

APPEAL from the Third District Court.

When the case was heard in the Court below Hon. Alex. White was the presiding judge and delivered the following Opinion:

The Appellant and Appellee both claim, under the act of Congress, of March 2d, 1867, entitled, "An Act for the relief of the inhabitants of cities and towns upon the public lands," and the Act of the Territory of Utah, of February 17th, 1869, prescribing rules and regulations for the execution of the trust arising under said Act of Congress.

The relief which was designed to be granted by said Act of Congress, was to enable the inhabitants of cities and towns settled upon the public lands of the United States to secure a title to such lands from the Government by paying to the Government the minimum price for such lands. As a means of doing this most conveniently it was provided that when a city or town was incorporated that the corporate parties thereof, and when not incorporated the Judge of the County Court of the county in which such city or town "may be situated," should enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupant thereof, according to their respective interests. These provisions created the corporate authorities of an incorporated city or town, and the Judge of the County Court in case the city or town was not incorporated when the land was entered, under the provisions of the Act of Congress, trustees, depositories of the legal title for the inhabitants of the city or town who had settled and occupied the land for the several use and benefit of the occupants thereof according to their respective interest. The execution of which trust, as to the disposal of lots in such town and the proceeds of the sales thereof, was to be conducted under such rules and regulations as might be prescribed by the legislative authority of the state or territory in which the same was situated. Whatever may have been the purpose of Congress in reference to

cities and towns, as communities, it is evident that the leading object was to secure individual rights to the inhabitants of cities and towns who were occupants of the lands embraced within the limits of the entry contemplated by said acts.    These individual rights flow from and are based upon the grant in the Act of Congress.    It confers the right, defines it character, limits its scope and points out the manner of its consummation.

The power conferred upon the Territorial legislature is to execute the trust.    It has no power to interfere with the individual rights which vested or became vested under the Act of Congress.

If this proposition be true, then we are to look to the Act of Congress alone to determine who are entitled under it.    The primal fact which gives the right to the inhabitants of the city or town as a community is that they have settled and occupied the public lands as a city or town, and the primal fact that gives to any individual a right to any lot or subdivision of such public lands, is that he or she was the occupant of such lot or subdivision of such public lands.    Occupancy is the central and leading idea of the grant, and upon this, in a positive or qualified sense, must depend any right which can be asserted under it.    It is in trust for the several use and benefit of the occupants thereof according to their respective interests.    The execution of this trust, as to the disposal of the lots in such town and the proceeds of the sales thereof, is to be conducted under rules and regulations prescribed by the legislative authority of the State or Territory.    What these rules and regulations shall be is left to legislative discretion, limited only by the condition that they must be in furtherance of the execution of the trust and must not violate its letter or its spirit.    As to rights which may accrue to individuals under the grant, the legislature can only make rules and regulations to eliminate and define, and establish them. As to the rights which may accrue to the community, it has the power to dispose of the proceeds of the sales. In determining what are the rights of individuals under

the Act of Congress, the rules and regulations adopted by the legislature could be looked to at most as only a legislative exposition or construction of the Act of Congress, and could not be regarded as authoritative or binding upon the Court as a legislative enactment. There being no controversy as to compliance with the rules and regulations enacted by the territorial legislature in bringing the claims of the parties before the Judge of Probate in the Court below, and none as to the regularity of the appeal to this Court, the Court will not look to the act of the legislature of Feb. 1869, in the determination of the question at issue in this case, but will address itself to the construction of the Act of Congress as the source from which whatever rights may be asserted, by either of the parties, must flow, and as the standard by which their respective claims must be tested and determined.

It has for a long time been the settled policy of the government of the United States to encourage the actual settlement of the public lands, and it has also regarded with disfavor the entry of public lands for purposes of speculation. The settlement required by law includes actual occupation of the land, and the subjection of the soil by labor, to the beneficial use of the person proposing to enter or buy the land from the government. The price at which the land could be bought was fixed by law, as were also the precedent conditions to a purchase. The first act of the settler was the occupancy of the land; the last was the payment of the purchase money, (by the entry of the land at the proper land office.) The issuance of the patent followed as a sequence to the regular entry of the land. The title to the land and the right to the title remained in the government until the entry of the land at the proper land office. The settler had possession and the right to possession, and upon compliance with the prerequisites of the law he had the exclusive right to buy of the government at the price fixed by law the entrance money or the minimum price for the land. He was called a pre-emptor; one who buys before, or one

who has by law a first and exclusive right to buy the land of the government. The right of the pre-emptor depends upon the occupation of the land and its continued possession, to the time of application to enter it at the proper land office. An abandonment or surrender of possession, is a forfeiture of all right to enter the land. The right of the settler upon lands is then a possession with a right to possession, coupled with a right (the precedent conditions being complied with), to enter the land at the minimum government price. The title to the land remains in the government, and no right to a title inures to the pre-emptor until he has entered the land. Even after he has occupied the land, made his improvements and filed his declaration of an intention to enter the land, the government can by special grant convey the land to another. The pre-emptor has no estate, legal or equitable, in the land, which can be recognized or enforced in law, except such as grows out of the possession of the land.

The policy of the Federal government with regard to public lands settled and occupied as sites of cities or towns was, in the beginning, the reverse of that governing as to public lands open to pre-emption. Such lands were withdrawn from entry, and the government held them with a view to public sales to the highest bidder. This latter policy was abandoned in 1844, and since then the policy of the government has been to allow the entry of such lands at the minimum price for the use and benefit of the occupants of the lands within such city or town sites according to their respective interests. In other words the policy which had guided the government with regard to the settlement and entry of agricultural lands, was adopted by it *mutatis mutundis*, as to the inhabitants of cities and towns, the occupancy of the land in both cases being the substantial basis upon which the individual right depends. The nature and quality of the interest which each class has in the land is the same. The government holds the title—the interest of the occupants is only a possession, and the right to the

possession, with the right to the one as a pre-emptor, and the other as a member of a community to enter or have entered the land—in other words, to buy it of the government at the minimum price. This limited interest in the land is the creature of the acts of Congress; it is novel and anomalous, and only subject to the ordinary rules of law governing real estate (if at all) in a narrow and subordinate sense. The fee simple which is usually the largest possible estate which a man can have in and which draws to it all of the incidents of such an estate such as possession or the right of possession, and is the predicate of the relations of the landlord and tenant, does not enter into or constitute any part of this statutory interest in land which is created by the acts of Congress. On the contrary the fee is recognized as being in another, and this estate or interest in the land exists in its narrow and meagre entirety, without and independent of it.

To apply to it the rules and analogies which ordinarily govern and guide in determining interests and relations in regard to real estate, would be in contravention of the very nature of the right itself. The title to real estate in now in abeyance. This statutory interest vanishes upon the mere abandonment of the possession of the land. The title to real estate can only be transferred from one person to another by writing in proper form and duly attested. This interest can pass from one to another by the surrender of possession of the land. The conclusion educed from analogies as above announced, is further strengthened and confirmed by the language of the Acts of Congress in conferring this right upon the inhabitants of cities and towns. The entry under authority of the Acts of Congress is "in trust for the several use and benefit of the occupants thereof according to their respective interests." This phraseology points out the class who are the beneficiaries in the trust—"occupants"—and also fixes the time of occupancy, the date of the entry of the land by the corporate authorities or the judge of the County Court which determines the individual *cestie que trusts*.

Those in possession of the land when the entry is made by the Probate Judge, are the persons for whom the land is held, in trust, and to whom he is to make the deeds. * * * This is the construction and meaning of the Act of Congress—Copeld *v.* McClelland, 16th Wallace, 334. The Act of Congress of May 23d, 1844, referred to in the citation just made, uses the same phraseology in reference to this subject matter as the Act of Congress of March 2d, 1867, under which the parties in this case claim.

That this is the reasonable and just construction of the Act of Congress, and that the presumption is in favor of the actual occupant at the time of entry of a lot or parcel of ground within the limits of a city or town site, settled or occupied as such upon public lands, and entered under authority of the Act of Congress, March 2, 1867, above referred to, is, in the opinion of the Court, sustained by reason and authority; but out of this springs another question of general interest and necessary to the adjudication of this case and that is whether the occupancy at the time of entry is conclusive in favor of the right of the individual occupying, to the title to the land, or whether it is only presumptive, and if so, whether the circumstances in this case, repel the presumption in favor of the actual occupant at the time of the entry of the land by the trustee, and show the right to the land in controversy to be in another. The Act of Congress, March 2d, 1867, confers upon the State or Territorial Legislature the execution of the trust, "as to the disposal of the lots in such town," etc., "under such rules and regulations as may be prescribed," etc. This must be done according to the respective interests of the occupants. Does this language "respective interests" apply to the topographical area and measurement of the lots occupied, or is it to be considered in a larger sense as embracing the nature of the occupancy and the quality of interest in the land which the occupant claims as well. The Legislature had construed this language in the larger and more comprehensive sense: By section

45

3 of the act of the legislature of Utah, entitled "An act prescribing rules and regulations for the execution of the trust arising under the Act of Congress, March 2d, 1867," it is enacted, "that each and every person, or association, or company of persons, or corporation claiming to be the rightful owner of possession, occupant or occupants, or entitled to the occupancy or possession of such lands, or any lot, block, share or parcel thereof. shall within six months" &c., &c., sign a statement in writing, &c.

These are the persons and these the interests which the Legislature regarded as entitled to claim and assert title to lots or parcels of land in any city or land in the Territory under this Act of Congress. It is manifest that it was the design of the Legislature to extend the benefits of the Act of Congress to two classes of persons —actual occupants and the rightful claimants or owners of possessions—without the occupancy or possession.

This legislation in the opinion of the Court was in harmony with the Act of Congress, and within the authority conferred by the Act of Congress upon the Territorial Legislature, and the construction given by the Legislature to the Act of Congress in this particular is adopted by the Court.

The findings of the law by the Court in the case under consideration are as follows ;

First—That under the several Acts of Congress upon the subject, and especially the Act of the 23d day of May, 1844, entitled, "An act for the relief of the inhabitants of towns upon the public lands of the United States under certain circumstances," and the Act of March 2d, 1867, entitled, "An act for the relief of the inhabitants of cities and towns upon the public lands," that the right which the individual inhabitant of the city or town took was a possession of the land with the right to possession and the use with the right as a member of the community to have the land entered by the trustee indicated in said Acts of Congress, at the minimum price in the proper land office of the United States, and the right under such rules and regulations as might be

prescribed by the proper Legislative authority to have title made to himself for such lot, or subdivision as he occupied, or had the rightful claim of possession to at the time of entry of the land by the trustee, &c.

Second—That this right was a statutory right created and existing by authority of the Acts of Congress, declaring, defining and limiting it.

Third—That the basis of the right, and an indispensable constituent of it, is the actual occupancy of the land at the time of the entry by the trustee, or the possession, actual or constructive, or the right to the possession at that time.

Fourth—That occupancy at the time of the entry of the land by the trustee, presumptively gives the right to the occupant of the land, but that this presumption may be impeached and overthrown by proof.

Fifth—That possession being of the substance of the right, that the right may be lost by abandonment or surrender of the possession, and that it may be transferred to another by a transfer of the possession.

Whether at all, and if so, or how far improvements on lots may enter into the question of rights of occupants under the Acts of Congress referred to, is not necessary to the determination of this case, and therefore has not been discussed or decided in this opinion. An application of the conclusions of law to the facts as found by the Court will readily determine the rights of the parties in this case.

The Appellant, Sarah M. Pratt, was in the possession of the lot in controversy, occupying it as a home at the time of the entry of the land on which the city of Salt Lake is situated, by the trustee, under the Act of Congress. This gave to her a *prima facie* right to a title from the trustee. Is this right repelled by the proof, and a right established in the Appellee, Brigham Young? Sarah M. Pratt, and her husband, Orson Pratt, occupied the lot some time previous to 1861, and she put improvements upon it. They then left it, and afterwards, some years before 1868, the Appellee came into possession.

In the latter part of the year 1867, or early in 1868, Mrs. Pratt came back to the city of Salt Lake, and according to the testimony of both the Appellant and Appellee, the Appellee gave her the possession of the lot. There was no qualification of this surrender of possession at the time; no reservation of rent, or any agreement of any kind, showing or tending to show that there was any reservation of the possession, or the right of possession, by the Appellee. No rent was ever paid by, or claimed of the Appellant, and she has had the continuous possession from the 12th of March, 1868, occupying it as a home for herself and her family. There was an effort made to prove that Orson Pratt paid rent for the premises to the Appellee, but in this (even if Appellant would have been bound by it) there is a failure. There is no proof that Orson Pratt ever paid rent for the premises, or ever knew that any was paid, or that any authorized agent of his ever paid any rent for him.

Upon this state of the case it is the opinion of the Court that there is no sufficient proof to repel the presumptive right of Sarah M. Pratt to a title to the lot in controversy as the occupant thereof at the date of the entry of the land by the trustee under the Act of Congress.

In the Supreme Court the case was argued at the June Term, 1876.

*Williams & Young,* for Appellant.

*D. Cooper & H. Pratt,* for Respondent.

M. SCHAEFFER, C. J., delivered the opinion of the Court.

This proceeding was originally instituted in the Probate Court of Salt Lake County, under the Act of the Legislature of the Territory of Utah, approved February 17, 1869, entitled "An Act prescribing rules and regulations for the execution of the trust arising under an Act of Congress, both parties, Appellant and Respondent,

claiming title to the half lot in controversy by virtue of the Act of Congress entitled "An Act for the relief of the inhabitants of cities and towns upon the Public Lands."

In the Probate Court it was adjudged that the Appellant was entit'ed to said half lot. From this judgment an appeal was taken to the Third District Court of this Territory, by the Respondent, and on the trial in such District Court the judgment of the Probate Court was reversed and for nought declared, and a judgment rendered to the effect that Sarah M. Pratt was justly entitled to said half lot.

Appellant now brings this cause here by appeal from the judgment of the District Court, and assigns for errors :

First. That the Court erred in overruling Respondent's motion to dismiss the appeal. We think the appeal from the Probate Court was properly taken, and there was no error in overruling the motion to dismiss.

The second and main error assigned, is that "this Court erred in its findings and judgment under the evidence," by which we understand the Attorneys of the Appellant to mean that the evidence does not support the findings, and that the judgment is against the law. Section 1,387 of the Revised Statutes of the United States, which is part of the Act of Congress approved March 2nd, 1867, provides that "whenever any portion of the public lands have been or may be settled upon and occupied as a town site, not subject to entry under the Agricultural Pre-emption Laws, it is lawful, in case such town be incorporated, for the corporate authorities thereof to enter at the proper Land Office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof according to their respective interests ; the execution of which trust, as to the disposal of the lots in such town and the proceeds of the sale thereof, to be conducted under such regulations as may be provided by the Legislative authority of the State or Territory in which the

same may be situated." Under this Act of Congress, the lots in question were entered by the Mayor of Salt Lake City. He is, therefore, the trustee who holds the legal title for the *cestui que trust, i. e.,* he holds the lot "for the several use and benefit of the occupants thereof, according to their respective interests."

In this particular case two things must concur to give the right to the title to the lot in controversy, to either of the contestants. First, there must have been a town or city with resident occupants, on the public lands duly incorporated, to secure the title from the National Government. This is conceded, and, therefore, the legal title is in the Mayor, as the representative of such town or city. If there is no proper *cestui que trust,* as provided by the aforesaid Act of Congress, then the Mayor holds the title for the benefit of the corporation; but if there be an actual occupant of such lot at the time of the entry by the Mayor, then he, the occupant, becomes the legal *cestui que trust,* and the Mayor holds the legal title for his benefit.

There must therefore be, secondly, an actual *bona fide* occupancy by the individual, who is entitled to such benefit, and when there is more than one of such occupants, then the title is held in trust for the use and benefit of such occupants, according to their respective interests. Whilst this Act of Congress confers certain rights and privileges upon the aggregate inhabitants of the town or city thus located upon public lands, it is nevertheless apparent that the primary object was to secure individual rights to the respective inhabitants of the towns and cities who were also the respective occupants of the several lots or parcels of land claimed by them.

The power conferred by this Act of Congress upon the Territorial Legislature is to make regulations for the execution of the trust. It has no power to interfere with, or to modify the rights conferred by the Act of Congress, and if the Territorial Legislature, by its Act approved February 17th, 1869, entitled "An Act prescribing Rules and Regulations for the execution of the Trust

arising under the Act of Congress," undertook to confer rights upon persons, associations, or corporations, other than those mentioned in the Act of Congress, such attempt to confer such rights is simply void. We can readily conceive of a case where an individual was prior to the entry by the Mayor, in the actual *bona fide* occupancy of the lot, and where he was wrongfully ousted by an intruder or trespasser before such entry was made, in which case we think the original *bona fide* occupant should receive the legal title thereto, notwithstanding the wrongful occupancy by the other at the time of the entry; but we do not understand that the Act of Congress in any case confers the right to the title of any lot upon any individual who was never the personal occupant of such lot. But suppose that the Territorial Legislature by its Act, approved February 17th, 1869, conferred the right to the title of the half lot in controversy upon persons claiming to be the rightful owners of possession, occupants, or to be so entitled to the occupancy or possession of such lot; and supposing that such legislation is in harmony with or justified by the Act of Congress above referred to, which we only admit for the purpose of the argument, what are the respective rights of the parties herein to the half lot in controversy? It is clearly shown by the evidence that the Respondent, Sarah M. Pratt, occupied this lot from 1854 to 1861, and that during that time she made valuable improvements thereon, and that in 1861 she, with her husband and family, went south in this Territory and remained there until 1867; that during the time she was south, as aforesaid, the said lot was occupied by some of the family of the Appellant, by virtue of a purchase by Appellant from the husband of Respondent.

That on the 12th of March, 1868, she, the Respondent with her children, with and by the consent of Appellant, resumed the actual possession of the said half lot, made valuable improvements thereon and continued to occupy the same from thence hitherto.

That Orson Pratt, the husband of Respondent, has

not lived with Respondent and her family since March 12th, 1868 ; that he has five other families with some of whom he is supposed to have resided ; that the Respondent and her children have supported themselves since 1868, with very little if any aid from the said Orson Pratt. It also appears from the evidence that the possession of the said half lot was freely and voluntarily given to Respondent in 1868 without any contract for rent or any understanding or agreement expressed or implied, that she should become or be the tenant of Appellant or any one else, at will or otherwise, even if that were possible under the peculiar circumstances of the case, which we think is not the fact. Whatever interest the Appellant had in the premises on or before March 12th, 1868, vanished upon the abandonment or surrender of the possession to the Respondent, and she being, for the purposes of the proceeding, the head of her family and actually occupying the said half lot as the residence and home of herself and family from the 12th of March, 1868, until long after the entry made by the Mayor of Salt Lake City, she is in our opinion entitled to a deed for the same. The admission or rejection of the evidence which the Court below declined to consider does not affect the status of the case, and if it had been admitted as competent by the District Court, and if the Court had given it all the force which could reasonably be claimed for it, the Appellant would not, in our opinion, be entitled to the half lot in controversy.

The judgment of the Court below must therefore be affirmed.

BOREMAN, J., concurred.